WILLIAMS v. JUALPA CO.

(First Division.   Juneau.   December 24, 1906.)

No. 396A.

1. PARTIES (§ 6*)—PLAINTIFFS—REAL PARTY IN INTEREST.
   Every action shall be prosecuted in the name of the real party in interest.

   [Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 6–8; Dec. Dig. § 6.*]

2. TRUSTS (§§ 17, 18*)—CREATION—MANNER.
   No trust can be created otherwise than by operation of law or by written instrument.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

This is a suit in equity, seeking relief by injunction and for damages alleged to have been caused upon a placer mining claim known as the "Woods Fraction Claim," located on Gold creek, about two miles from the town of Juneau, at or near the foot of Snow Slide gulch. The damages are alleged to have been the result of the construction of a dam by defendant across Gold creek just below the claim in question. It is asserted that in consequence of this dam large quantities of gravel and other débris settled upon the claim, and the waters of the creek backed upon and flooded the creek.

The defendant denies the allegation that damages accrued from the construction of the dam. It also put in issue plaintiff's ownership of the dam, and his capacity to prosecute the writ, asserting that, if a cause of action exists at all, the proper parties are the heirs, executors, etc., of the estate of A. K. Delaney, deceased. Plaintiff nowhere in his pleadings alleges that he holds under a trust, either express or implied.

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The evidence adduced on the trial of the cause shows the chain of title in the claim in question from the original location on March 9, 1895, when J. E. Woods received a deed from one Constance Locknitt. Wood went into possession, did the assessment work thereon, and worked the claim in a meager way until 1899, when he died. His deed was recorded on the 7th day of June, 1898, and thereafter he died. On June 23, 1899, J. T. Martin was duly appointed the administrator of Woods' estate and qualified as such. A. K. Delaney was his legal adviser. On March 31, 1901, Martin obtained from the probate court an order to sell the property, and on September 20, 1901, the Woods fraction claim was put up and sold by him pursuant to that order. There were, so far as the evidence discloses, but two bidders at the sale, W. H. Hile and A. K. Delaney. The former bid for himself. The latter announced that he represented L. L. Williams, the plaintiff in this suit. Delaney bought the property for $175, stating, at the time, that he did so for Williams. The same day the administrator reported to the probate court that he had sold the claim to L. L. Williams. Thereafter, on October 1, 1901, the sale was confirmed by the court, and the administrator was ordered to convey the property to Williams. The evidence discloses no deed. Williams did not personally figure in the sale, or in any subsequent transactions. All the business was transacted by Delaney. Martin took the latter to the claim and pointed it out to him. The assessment work upon the claim was done at the instance of Delaney, and paid for by him. In 1902 one W. C. Graham prospected the claim and entered into a three-year lease which purports to run from Williams himself. All the transactions relative to the lease were made with Delaney; Delaney himself executing it as attorney for Williams. Graham did have some conversation with Williams, in which the latter intimated that he owned the claim, but that Delaney would make all arrangements concerning it.

But it is plain from the testimony of Williams, called as a witness for the defense, that he himself never considered that he was the owner, and that he never had had anything to do with the property.　Shortly after the administrator's sale, Delaney told plaintiff that he had bought some property for him in the basin.　To this plaintiff replied, "All right," but that he "had no money to invest up there."　Delaney then told him that it was for himself.　Williams neither received a deed, nor went into possession of the claim, neither paid the purchase price, nor did nor paid for the assessment work. He frankly states, "It is not my property," but, "so far as I know, it belongs to Judge Delaney.　He told me he had bought it."　He further states that he has no interest in the claim, and had none at the time that the suit was brought, and did not pay the expenses of the suit.　The property was not sold to him, and he did not buy it; nor did he authorize any one to buy it for him, though he did afterward, when Judge Delaney told him he had bought the property, say "All right."

All that appears in the evidence on the question of a trust is that Williams testified: "I was holding it as a trustee for Judge Delaney.　I suppose Judge Delaney had some reason' why he wanted it in my name.　I am holding some of his property in my name now."　In response to the question, "Did you ever have a written agreement with him that you were to hold this property in trust for him, or anything like that?" he said, "I did not."　On cross-examination, he testified that it was his understanding that the suit was brought for the benefit of the equitable owners in his name.　As to the lease with Graham, he testified that Delaney was authorized to do anything he wanted to do with the claim, but that he did not know that he had ever had any conversation about it in any way.

Malony & Cobb, for plaintiff.
Winn & Heard, for defendant.

GUNNISON, District Judge. Under the pleadings and the evidence, the vital question to be determined is as to the legal capacity of the plaintiff to maintain this suit. That Williams is not the real party in interest is too patent to require further discussion. Even the plaintiff's counsel seems to have ceased to seriously urge that contention. Under section 25 of part 4 of the Alaska Code of Civil Procedure, which requires "every action to be prosecuted in the name of the real party in interest," the suit must be dismissed unless plaintiff has established his right to maintain the bill under the exception to that statute found in section 27 which is as follows:

"An executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted."

It is here to be noted that plaintiff nowhere in the pleadings alleges that he sues otherwise than as the real party in interest. In his testimony, however, he frankly states that he has no interest in the property, but is simply "holding it as trustee for Delaney." We have already considered the transactions between Williams and Delaney upon which he bases that assertion. Let us see whether the facts as disclosed by Judge Williams are sufficient to constitute him "a trustee of an express trust," and thus enable him to prosecute this suit.

Part 4, § 1046, of the Alaska Code provides:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."

Did those acts create any trust within the meaning of that section? Certainly they did not; for plaintiff clearly and

3 A.R.—15

definitely stated that there was no conveyance or instrument in writing. Nor has any such trust or power been created or declared by operation of law.

But that section does not affect certain cases which are specified in the following section (1047):

"The last section shall not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent a trust arising or being extinguished by implication or operation of law, nor to affect the power of a court to compel specific performance of an agreement in relation to such property."

The status of the case at bar, however, is such that it does not fall within any of the exceptions.

The conclusion of the court is, therefore, that the plaintiff is without capacity, either as an individual or as a trustee, to prosecute this suit under the provisions of the Code, and that the motion of the defendant, made at the conclusion of the trial, to dismiss the bill on those grounds in the case, is therefore unnecessary.

Let a decree be entered in conformity herewith.